040599/13818/JAF/JFM/RTA/LRL

# IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZACHARY WEYER, | |
| Plaintiff, | Case Number 17-cv-3621 |
| v. | Judge Hon. Matthew F. Kennelly |
| SAIA MOTOR FREIGHT LINE, LLC et al. | Magistrate Judge Hon. Susan E. Cox |
| Defendants. | |

## DEFENDANT, SAIA MOTOR FREIGHT LINE, LLC'S, MEMORANDUM OF LAW IN SUPPORT OF ITS FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S PUNITIVE DAMAGES COUNTS

NOW COMES the Defendant, SAIA MOTOR FREIGHT LINE, LLC ("SAIA"), by and through its attorneys, James A. Foster, James F. Maruna, Ryan T. Armour, and Lara R. Lickhalter, of CASSIDAY SCHADE LLP, and for its Memorandum of Law in Support of its Fed. R. Civ. P. 56 Motion for Summary Judgment on Plaintiff's Punitive Damages Counts[1], states as follows:

## INTRODUCTION

This Honorable Court should dismiss Plaintiff's punitive damages counts against SAIA because the Plaintiff has not pled, nor has the evidence shown, nor can the evidence ever show, that he is entitled to punitive damages in this diversity lawsuit based on a motor vehicle accident. The undisputed facts are that on March 24, 2016, Defendant, Robert Mueller, was driving a semi -tractor trailer for Defendant, SAIA, when his rear-trailer uncoupled at the intersection of I-55 southbound and I-80 westbound near Troy Township, Illinois in Chicago's far south suburbs. Immediately after the trailer uncoupled, Mr. Mueller jumped out of his cab and stood behind the detached trailer waiving a flashlight to alert oncoming cars. Fifteen to twenty (15-20) cars

---

[1] Counts V and VI of Plaintiff's First Amended Complaint.

passed by Mr. Mueller and avoided the stopped trailer. However, per the Plaintiff's testimony, he followed the car in front of him so closely that he did not have sufficient time to brake or turn and avoid the trailer once he saw it in the roadway. The front passenger's side of the Plaintiff's pickup struck the rear driver's side of the detached trailer.

This is a textbook ordinary negligence fact pattern. The undisputed facts are that if Mr. Mueller had performed a better pre-trip equipment inspection he would have determined that he "high hooked" the connection between the rear trailer and the fifth wheel converter gear. Even Mr. Mueller, the driver, a defendant in this case, represented by separate counsel from SAIA, admitted under oath that nothing that SAIA did, or failed to do, caused his rear trailer to uncouple. Yet, the Plaintiff still claims willful and wanton misconduct against SAIA.

The facts simply do not support punitive damages against SAIA. For instance, Plaintiff claims that SAIA's safety and supervision program is so deficient that punitive damages must be imposed against SAIA because in the five (5) years before this accident, SAIA's fleet dropped 312 trailers. Yet, the Plaintiff, conveniently, ignores mentioning that during this same time period SAIA's fleet drove 1.4-billion miles. Thus, SAIA only dropped a trailer on 0.00002% of the 1.4-billion miles driven by its fleet during this timeframe. No reasonable jury can hear this fact and return a verdict that SAIA's safety and supervisory program is reckless. After all, why would anyone want to punish and deter a safety program that resulted in a 99.99998% success rate over 1.4-billion miles?

The Plaintiff can still seek compensatory damages against SAIA for its agent's (Mr. Mueller) failure to spot the high hook during the pre-trip equipment inspection. However, he cannot proceed on a claim of punitive damages because the evidence does not support a finding

of willful and wanton misconduct, at law.  Accordingly, SAIA is entitled to judgment at law on Plaintiff's punitive damages claims.

## II.  MATERIAL FACTS

SAIA incorporates its Statement of Facts Pursuant to Local Rule 56.1 and accompanying exhibits, filed concurrently with its Motion for Summary Judgment and supporting Memorandum of Law.

## III.  ARGUMENT

**A.     Venue and Jurisdiction are Proper**

Jurisdiction is proper in this Court pursuant to diversity jurisdiction because there is complete diversity of the parties and more than $75,000 is in controversy.  *See* SAIA's L.R. 56.1 Statement of Facts ("SOF"), ¶ 1.  Venue is proper in this Court because the events occurred in Troy Township, Illinois which is located in this judicial district.  (SOF at ¶ 2).

**B.     Summary Judgment is Proper in this Matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court views the evidence in the light most favorable to the opposing party and draws all justifiable inferences in that party's however.  Yet, a mere scintilla of evidence in support of the Plaintiff's position is not sufficient to create a genuine issue of material fact to oppose a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Likewise, not every conceivable inference must be drawn, only reasonable inferences.  *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312-13 (7th Cir.1986).  If defendants meet their burden in showing that there is an absence of evidence to support the plaintiff's claim, the plaintiff must demonstrate by

affidavit, depositions or other evidence that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25 (1986).

A court may grant summary judgment in a defendant's favor on the issue of punitive damages alone. *Doe v. Templeton,* No. 03 C 5076, 2004 U.S. Dist. LEXIS 15409, * 16, 2004 WL 1882436 (N.D. Ill. Aug. 5, 2004); *Patel v. American Bd. of Psychiatry & Neurology, Inc.*, No. 89 C 1751, 1990 U.S. Dist. LEXIS 13264, * 11, 1990 WL 156318 (N.D. Ill. Oct. 4, 1990).

## C.    Illinois Law Strongly Disfavors Punitive Damages

At the outset, Plaintiff faces an uphill battle in surviving summary judgment because Illinois case law, which this Court follows in a diversity jurisdiction matter, strongly disfavors allowing punitive damages in what are, otherwise, ordinary negligence cases. *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems,* 428 F.3d 706, 714 (7th Cir. 2005). Under Illinois law, "while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." *Kempner Mobile Electronics,* 428 F.3d at 714 *quoting Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (Ill. 1961).

Under Illinois law, punitive damages are disfavored and awarded only upon a showing of gross fraud, breach of trust, malice, or willfulness. *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275-76 (7th Cir. 1996) (finding that to justify punitive damages, the defendants' conduct must involve outrage similar to that found in a crime, and plaintiff must introduce some evidence of intent to injure); *Jentz v. ConAgra Foods, Inc.*, 767 F.3d 688, 693 (7th Cir. 2014) (noting that the conduct, if not intentional "entails at least a 'gross deviation from the standard of care.'"); *see also McCann v. Presswood*, 308 Ill. App. 3d 1068, 1071, 721 N.E.2d 811, 814 (Ill. App. Ct. 1999) (collecting cases) ("Illinois courts have consistently held that punitive damages are

disfavored at law and are generally inappropriate absent evidence of <u>outrageous conduct</u> or acts committed with malice or <u>reckless indifference</u> toward the rights of others.") (emphasis added). As the Illinois Supreme Court explained:

> Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can only be awarded for conduct for which this remedy is appropriate -- which is to say, conduct involving some element of outrage similar to that usually found in a crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others. *Loitz v. Remington Arms Co.*, 138 Ill.2d 404, 415-16, 563 N.E.2d 397, 402 (Ill. 1990).

Unless the Plaintiff can point this Court to facts demonstrating that SAIA's conduct was so outrageous that its acts or omissions must have been committed with evil motive or reckless indifference, punitive damages cannot be awarded, and his claim for them should be dismissed.

**D.     Plaintiff's First Amended Complaint Does Not Properly Plead Punitive Damages and the Deadline for Amending Pleadings Has Long Since Passed**

On its face, Plaintiff's First Amended Complaint actually fails to properly plead punitive damages, and Plaintiff's deadline to amend his pleadings, and cure any defects, expired on March 30, 2018. *See* CM/ECF Minute Order of July 13, 2017 [Dkt. # 17]. At the pleading stage, the Seventh Circuit has explained that a plaintiff pursuing a willful and wanton misconduct action "must establish all of the elements of a negligence claim, *plus* show that the breach of duty was not merely negligent, but was committed with 'conscious disregard for the welfare of the plaintiff.'" *Doe-2 v. McLean County Unit District No. 5 Bd. of Directors*, 593 F.3d 507, 514 (7th Cir. 2010) (emphasis added).

Simply labeling certain conduct willful and wanton is insufficient; rather, the facts must actually demonstrate that the conduct was intentional or reckless conduct. *Gregor v. Kleiser,* 111 Ill. App. 3d 333, 336, 443 N.E.2d 1162, 1165 (Ill. App. Ct. 1982). In applying Illinois law

5

to review a complaint's prayer for punitive damages, a Federal Judge noted that the facts contained in the pleading must show that the underlying tort was "accompanied by aggravated circumstances such as wantonness, willfulness, malice, fraud, or oppression, or when the defendant acts with such gross negligence as to indicate a wanton disregard for the rights of others." *Sims v. Hitachi Const. Truck Mfg.*, No. 09-CV-734-JPG-DGW, 2011 U.S. Dist. LEXIS 90401, * 7, 2011 WL 3568761 (S.D. Ill. Aug. 15, 2011) (allowing punitive damages in a pleading when the facts alleged that the defendant knowingly spoiled evidence).

The problem with the Plaintiff's First Amended Complaint is that he fails to actually plead any additional fact showing that the underlying tort was committed wantonly or recklessly. In fact, he simply re-labels the same facts in his ordinary negligence claims as "willful and wanton". For example, in his ordinary negligence counts, Plaintiff sues SAIA on a theory of *respondeat superior* liability based on an allegation that Mr. Mueller operated a semi-tractor and trailers "without conducting an adequate and proper pre-trip and post-trip inspections" and allowed "the semi-tractor, trailers and fifth wheel to be operated without safe and adequate inspection, service, maintenance, and repair…." (SOF at ¶ 6).

In his punitive damages counts, the Plaintiff simply adds the phrase "consciously and recklessly" to the same basic conduct in order to "satisfy" his burden of alleging willful and wanton misconduct. *Compare* (SOF at ¶ 6) (general negligence allegation: "[SAIA] negligently…allowed the operation of said semi-tractor and trailers without properly inspecting…") *with* (SOF at ¶ 6) (punitive allegation: "[SAIA] consciously and recklessly disregarded the safety of others by failing to supervise and train its drivers on how to manually inspect a fifth wheel coupling device…"). The Plaintiff uses the same underlying tort - the driver did not perform a proper pre-trip equipment inspection of the fifth wheel converter gear coupling

device – in order to support both his ordinary negligence claim and his willful and wanton misconduct claim.  There is no additional fact demonstrating that the act was done intentionally or recklessly.  *See Sims*, 2011 U.S. Dist. LEXIS 90401 at * 7 (holding that a pleading must show that the underlying tort was "accompanied by aggravated circumstances such as wantonness, willfulness, malice, fraud, or oppression….")  Simply adding punitive damages buzzwords to ordinary negligence allegations does not elevate them into willful and wanton misconduct.  Thus, Plaintiff's punitive damages allegations are defective and his deadline for amending the pleading has long since passed.  Accordingly, this Court should grant summary judgment to SAIA on Plaintiff's punitive damages counts.

**E.      Even if the Plaintiff Properly Pled Punitive Damages in his First Amended Complaint, He Is Not Entitled to Punitive Damages Because There Are No Facts in This Case Elevating the Ordinary Negligence Into Willful and Wanton Misconduct**

Even if the Plaintiff properly pled a punitive damages claim in his First Amended Complaint, this Court should still grant SAIA summary judgment on punitive damages because fact discovery produced no fact allowing a reasonable jury to enter a punitive damages verdict against SAIA.  Punitive damages are only available "for conduct involving some element of outrage, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." *Tucker v. Ill. Power Co.*, 232 Ill.App.3d 15, 31, 597 N.E.2d 220, 231 (Ill. App. Ct. 1992).

The facts of this case, viewed in the light most favorable to the Plaintiff, evidence only ordinary negligence.  Nothing in this fact pattern suggests outrageous or reckless conduct by SAIA or Mr. Mueller.  At best, the facts only suggest mistakes and errors - none committed recklessly and certainly none committed intentionally.

On the night of the accident, Mr. Mueller completed not one, but two, pre-trip equipment inspections. (SOF at ¶ 45, 49). He crawled underneath the equipment, twice, in order to confirm that he had a solid couple between the trailer and the dolly. (SOF at ¶ 45, 49). There is simply no evidence that Mr. Mueller did something reckless or intentional, like failing to conduct any pre-trip inspection, at all. Rather, at best, all that the Plaintiff can allege and prove is that Mr. Mueller conducted a deficient pre-trip inspection, and made an error in not spotting that he "high hooked" the connection between the trailer and dolly before departing the SAIA yard. However, the Illinois Supreme Court held that "[p]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment, and the like, which constitute ordinary negligence." *Loitz*, 138 Ill.2d at 415, 563 N.E.2d at 402. This is a case of ordinary negligence only.

Beyond Mr. Mueller's undisputed testimony, Illinois State Police Troopers Graham and Kunken: responded to this accident; interviewed Mr. Mueller; reviewed his log books; and conducted an inspection of the equipment. (SOF at ¶¶ 63-66). While Trooper Kunken testified that he had the authority to order Mr. Mueller or the equipment "out of service", he saw no reason to do so based on his investigation. (SOF at ¶ 66). Likewise, the Troopers found no Federal Motor Carrier Safety Act violations by SAIA or Mr. Mueller. (SOF at ¶ 67). Immediately after the accident, Mr. Mueller was drug and alcohol tested and came back clean. (SOF at ¶ 68). While Trooper Kunken did cite Mr. Mueller with a traffic citation for spilling a load on the highway, he was found not guilty of any traffic offense following a bench trial. (SOF at ¶ 73). Simply, the facts surrounding the accident do not evidence the sort of outrageous conduct necessary to impose punitive damages.

**F.      The Plaintiff's Specific Allegations of Willful and Wanton Misconduct Contained in Counts V and VI Lack Supporting Evidence**

Finally, the Plaintiff has failed to develop facts supporting the specific allegations of willful and wanton misconduct contained in Counts V and VI of his First Amended Complaint.

  *i.  <u>Count V - Willful and Wanton Safety and Supervision</u>*

First, in Count V, Plaintiff claims that SAIA disregarded the safety of others by: (i) failing to supervise and train its drivers on how to manually inspect a fifth wheel coupling device; (ii) failing to supervise and train its drivers on how to make sure that double trailers are securely fastened; and (iii) failing to supervise and train its drivers on how to properly inspect a fifth wheel for equipment issues that prevent proper coupling. (SOF at ¶ 6).

In the five years before this accident, SAIA's fleet drove over 1.4-billion miles. (SOF at ¶ 12). SAIA has in place multiple safety programs to mitigate and prevent accidents. Yet, as the Seventh Circuit noted, "[e]ven a small risk will come to pass if events are repeated often enough, but Illinois has not announced a rule under which punitive damages are proper whenever small or remote risks occur and cause injury." *Jentz*, 767 F.3d at 693.

Plaintiff's "fact" that SAIA's safety program evidences willful and wanton misconduct is the "number of past trailer separation and/or dropping incidents." (SOF at ¶ 6). SAIA employs approximately 4,333 CDL truck drivers. (SOF at ¶ 5). During discovery, Plaintiff requested statistics for how many dropped trailers SAIA's fleet had, overall, in the five (5) years preceding this accident. Plaintiff's liability expert, Walter G. Guntharp, Jr., reviewed the dropped trailer data and opined that SAIA had 312 trailer drops in the five years before the accident. (SOF at ¶ 75).[2] The problem with Plaintiff's theory is that he focuses on 312 trailer drops over a five (5)

---

[2] Plaintiff's expert actually wrote "6 year period" in his report but given that the trailer drop data he relied on was only from March 24, 2011 to March 24, 2016, SAIA contends that Plaintiff's expert probably made a typo.

year period in isolation without placing those trailer drops in the proper context of the sheer number of miles driven by SAIA's fleet in that time period.

During discovery, SAIA disclosed that in the five (5) years before this accident its fleet drove 1,462,747,100 miles. (SOF at ¶ 12). Thus, SAIA dropped a trailer on only 312 of the 1.4 billion miles that its fleet drove in the five (5) years before this accident. Put into a percent, SAIA only dropped a trailer on 0.00002% of the miles that its trucks drove in the five (5) years preceding this accident. *Compare* (SOF at ¶ 12) *with* (SOF at ¶ 75).

The Illinois Supreme Court has held that a failure rate of 0.003% was insufficient, at law, to warrant imposing punitive damages against a defendant. *See Loitz*, 138 Ill.2d at 420, 563 N.E.2d at 404. In *Loitz*, the Illinois Supreme Court reversed a jury's award of punitive damages against a gun manufacturer in a product liability case and noted that even though the plaintiff had evidence of ninety-four (94) prior accidents related to a particular gun model's barrel failing, when placed in the proper context, those ninety-four (94) prior accidents represented only 0.003% of the more than 3 million units of that particular gun model that were produced. *Id.* This "failure rate" was insufficient, at law, to impose punitive damages. *Id.*

Here, SAIA's trailer drop "failure rate" in the five years before this accident was 0.00002% - several magnitudes smaller than the *Loitz* "failure rate". (SOF at ¶ 12, 75). Flipped the other way, SAIA's safety and supervisory program resulted in no dropped trailers on 99.99998% of the 1.4-billion miles that SAIA's fleet drove in the five (5) years preceding this accident. No reasonable jury can hear this undisputed evidence and enter a verdict that SAIA's supervision and safety training of its employees was borderline criminal.

Beyond the numbers, Plaintiff secured testimony from Mr. Ridgway, a retired SAIA driver trainer, and CDL examiner for the State of Wisconsin, who testified that he worked for

multiple trucking companies as a trainer in his career, and that "SAIA had the best training of all the carriers I ever worked for."  (SOF at ¶ 33).  Moreover, the American Trucking Association has given SAIA multiple awards for its Line Haul truck driving safety program.  (SOF at ¶ 33). Finally, even Mr. Mueller, testified that there was nothing that SAIA did or failed to do that caused this separation.  (SOF at ¶ 72).  Thus, even if SAIA's safety program was somehow deficient, the deficiency did not contribute to this accident.  (SOF at ¶ 72).

        *ii.*     <u>*Count VI - Willful and Wanton Hiring/Retention of Mr. Mueller*</u>

Second, in Count VI, Plaintiff claims that SAIA consciously and recklessly disregarded the safety of others…by: (i) failing to vet or screen drivers, including Mr. Mueller, before hiring; (ii) retaining Mr. Mueller when had a previous dropped trailer incident while working for SAIA; and (iii) retaining Mr. Mueller when SAIA knew that he had a poor driving safety and employment record and was an "incompetent and unsafe driver." (SOF at ¶ 7).  Plaintiff's theory is that because Mr. Mueller had one prior trailer drop, SAIA's decision to re-train and retain Mr. Mueller following that original trailer drop was willful and wanton misconduct.  As pled, Count VI breaks down into two sub-parts - SAIA's decision to hire Mr. Mueller in 2010 and SAIA's decision to retain Mr. Mueller following 2012 trailer drop.  Once again, the undisputed facts defeat Plaintiff's vague allegations of willful and wanton misconduct.

As to SAIA's decision to hire Mr. Mueller in 2010, Mr. Mueller, like all SAIA applicants was thoroughly vetted by SAIA before being offered employment with SAIA, including undergoing pre-employment verification and background checks. (SOF at ¶ 22).  If a background check turns up that a driver ever had his or her CDL suspended, he or she is not offered employment with SAIA.  (SOF at ¶ 22).  Additionally, beyond merely relying on the background checks, SAIA gives all candidates a road test before even offering employment; and after

offering employment, still puts new-hires through six (6) days of training/certification, with five (5) of those days spent on-the-road with a driver trainer, before SAIA lets a new hire operate SAIA equipment on his or her own. (SOF at ¶ 21; 32).

As SAIA's hiring procedures specially applied to Mr. Mueller, he passed all pre-employment background checks, his pre-hire road test; and his six (6) days of training/certification before SAIA ever let him take the wheel on his own. (SOF at ¶ 23). His driver trainer, Mr. Ridgeway, personally observed Mr. Mueller couple (8) trailers before signing off that Mr. Mueller knew how to properly connect tractors and trailers using a fifth wheel converter gear. (SOF at ¶ 30). SAIA's decision to hire Mr. Mueller in 2010 was neither outrageous nor reckless (nor even negligent).

As to SAIA's decision to retain Mr. Mueller following his 2012 trailer drop in Milwaukee, an on point case soundly defeats Plaintiff's claim that this is evidence of willful and wanton misconduct. In *Ibanez v. Bettazza,* a Federal Judge granted summary judgment in favor of FedEx, on a plaintiff's punitive damages claim based on FedEx's decision to retain a truck driver who had multiple, documented, prior driving incidents and one accident before causing the subject accident giving rise to that litigation. No. 3:11-cv-01518-SI, 2013 U.S. Dist. LEXIS 44531, * 17-18, 2013 WL 1295219 (D. Or. Mar. 28, 2013).[3] In granting summary judgment in FedEx's favor on the retention punitive damages claim, the *Ibanez* Court noted that FedEx did not simply do nothing after the driver's prior accident. *Id.* Rather, FedEx suspended its driver following his prior accident; sent a safety manager to observe his driving; and made its driver watch additional training videos. *Id.* at * 18. The *Ibanez* Court noted that while FedEx's

---

[3] While *Ibanez* involved Oregon's punitive damages case law, Oregon's punitive damages standard is identical to Illinois' standard. *Compare Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F.Supp.2d 1120, 1140 (D. Or. 2010) (holding that punitive damages are not recoverable under Oregon law unless the defendant has shown a "reckless and outrageous indifference…") *with McCann*, 308 Ill. App. 3d at 1071, 721 N.E.2d at 814 ("Illinois courts have consistently held that punitive damages…are generally inappropriate absent evidence of outrageous conduct or acts committed with malice or reckless indifference....")

supervision and training may have ultimately been deficient in some respects (because another accident ultimately did occur); the *Ibanez* fact pattern showed that FedEx provided *some* supervision and training, as opposed to doing nothing. *Id.* Thus, FedEx's retention of the driver following the first accident was neither "reckless" nor "outrageous". *Id.* at * 20. Therefore, the Court granted summary judgment in FedEx's favor on the punitive damages claim. *Id.* at * 20.

Conversely, in *Johnson v. ASK Trucking, LLC*, a punitive damages theory based on retention of a driver following with a poor driving record survived summary judgment only when the record showed that the trucking company took no action, whatsoever, to discipline or train the driver after he kept having driving violations. No. 09-4058, 2011 U.S. Dist. LEXIS 31324, * 5, 2011 WL 1114247 (C.D. Ill. Mar. 25, 2011). In *Johnson*, the driver not only had known safety violations when he was hired, he incurred additional violations after being hired but still, the trucking company provided no further safety training and provided no discipline to the driver for his violations. *Id.* The *Johnson* Court found that a jury could determine that the trucking company's failure to provide any discipline or undertake any safety or retraining for the drive could rise to the level of reckless or willful misconduct. *Id.* at * 16 *but see Ibanez*, 2013 U.S. Dist. LEXIS 44531 at * 17-18 (distinguishing *Johnson* because "[u]nlike [the *Johnson* trucking company], however, FedEx provided some supervision and training.")

Here, when Mr. Mueller dropped a trailer in 2012, SAIA suspended him for three (3) days without pay; made him undergo and pass re-certification on coupling with a driver trainer who also worked as a CDL examiner for the State of Wisconsin; and then Mr. Mueller drove four (4) years for SAIA without dropping another trailer. (SOF at ¶¶ 37-38; 52). In 2015, SAIA also had Mr. Mueller attended a refresher course on proper coupling where he watched a detailed video on pre-trip inspections. (SOF at ¶ 39). SAIA's response to Mr. Mueller's prior accident is

almost identical to FedEx's response to its driver's prior accident in *Ibanez* and far different from the trucking company's lack of any response to the prior accident in *Johnson*.

Finally, as to Plaintiff's vague statement in Count VI that retaining Mr. Mueller was willful and wanton misconduct because Mr. Mueller was an "incompetent or unsafe driver", it bears noting that Mr. Mueller's CDL was never suspended while working for SAIA (or at any time in his life). (SOF at ¶ 4). Mr. Ridgeway, a SAIA driver trainer and CDL examiner who examined 480 to 600 CDL applicants for the State of Wisconsin throughout his career, inspected Mr. Mueller's driving twice, and advised that he never had any problems with Mr. Mueller's actual job performance. (SOF at ¶ 38). Finally, after this accident, Mr. Mueller was hired as a truck driver by another company, so at least one other trucking company reviewed Mr. Mueller's driving record and decided to hire him *even after his second trailer drop.* (SOF at ¶ 4).

In hindsight and in the light most favorable to the Plaintiff, maybe SAIA's decision to retain Mr. Mueller after the 2012 trailer drop was negligent. However, no reasonable jury can hear SAIA's response to the first dropped trailer and express "outrage" at SAIA's decision to retain Mr. Mueller. Therefore, Plaintiff's punitive damages claim fails.

## G. Plaintiff's Newly-Developed Driver Log Modification Theory is Impossible

Finally, in his liability expert's report, Plaintiff, for the first time, offers a brand new theory of punitive damages. Plaintiff's liability expert claims that Mr. Mueller modified his electronic driver logs to "reflect a 6 minute pre-trip inspection" on the night of the accident. (SOF at ¶ 76). Again, this theory is not in Plaintiff's First Amended Complaint, was not discussed at any of the depositions, including Mr. Muller's deposition, and was disclosed on July 2, 2018. The fact that at the eleventh hour, after SAIA indicated that it filing a dispositive

14

motion on punitive damages, the Plaintiff had to pivot and offer a new punitive damages theory only confirms that the facts of this case do not evidence willful and wanton misconduct.

In any event, Plaintiff's driver log modification theory is quickly and soundly defeated. SAIA's driver logs are kept electronically. (SOF at ¶ 77). Any and all modifications to a driver's log are recorded electronically, in a new entry captured inside of the existing driver log expressly titled "modified this record for the following reason." (SOF at ¶ 77). It is not possible for a SAIA driver, or anyone at SAIA, to modify an existing driver log entry without generating an electronic record of the modification. (SOF at ¶ 77). Mr. Mueller's logs from the night of the accident contain only two modifications: (i) two shipping document numbers were changed and (ii) the trailer equipment numbers were changed to reflect the correct equipment numbers. (SOF at ¶ 78). Neither of these modifications have anything to do with the pre-trip inspection. (SOF at ¶ 78). Because there is no modified log entry reflecting a change to Mr. Mueller's March 24, 2016 pre-trip inspection entry, Mr. Mueller did not modify his driver's log. (SOF at ¶ 78). Thus, Plaintiff's "modified log" theory is simply impossible, and reflects nothing more than his last second attempt to survive the instant summary judgment motion on punitive damages.

## CONCLUSION

WHEREFORE, Defendant, SAIA MOTOR FREIGHT LINE, LLC, respectfully requests that this Honorable Court grant Its Motion for Summary Judgment, enter an Order dismissing Counts V and VI of Plaintiff's First Amended Complaint with prejudice, and for any other relief that this Court deems just.

Respectfully submitted,

SAIA MOTOR FREIGHT LINE, LLC

By: _/s/ James F. Maruna_____

15

James A. Foster / ARDC No. 6185413
James F. Maruna / ARDC No. 6313433
Ryan T. Armour / ARDC No. 6285657
Lara R. Lickhalter / ARDC No. 6306444
CASSIDAY SCHADE, LLP
20 N. Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 - Fax
jfoster@cassiday.com
jmaruna@cassiday.com
rarmour@cassiday.com
llickhalter@cassiday.com

*Counsel for Defendant, SAIA MOTOR
FREIGHT LINE, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2018 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

8919228